# Commonwealth of Pennsylvania, Appellant, *v*. The Penn Mutual Life Insurance Company.

*Taxation—Insurance companies—Tax on premium—Deductions for dividend—Act of June 1, 1889, P. L. 420.*

In computing the amount of gross premiums received by a life insurance company in respect of which the insurance company is taxable under the Act of June 1, 1889, P. L. 420, dividends payable to the insured and actually credited upon the premiums payable by them respectively are properly deducted.

Argued Jan. 14, 1916. Appeal, No. 13, May T., 1915, by plaintiff, from judgment of C. P. Dauphin Co., Commonwealth Docket 1913, No. 31, for defendant on appeal from tax settlement in case of Commonwealth of Pennsylvania v. The Penn Mutual Life Insurance Company. Before BROWN, C. J., MESTREZAT, STEWART, FRAZER and WALLING, JJ. Affirmed.

Appeal from tax settlement.

The facts appear in the following opinion by McCAR-RELL, J.:

The defendant is a mutual life insurance company incorporated by the State of Pennsylvania. It has no capital stock and conducts its business upon the mutual plan. The accounting officers of the State have made four settlements against the defendant company for tax on gross premiums, from each of which settlements the company has appealed. Trial by jury has been duly waived. From the evidence submitted we find the following

### STATEMENT OF FACTS:

"The defendant company conducts its business upon what is known as the 'level premium plan.' Under this plan the maximum annual contribution which any

member can be called upon to pay is uniform through-
out the life of the policy. The member pays during his
early years a sum in excess of the current cost of his in-
surance. This excess is applied to the creation of a
reserve or individual insurance fund, which serves to
maintain the insurance in the later years, when the stip-
ulated level premium would be insufficient to meet the
current cost of insurance on the natural premium plan.
At the end of each year the excess of income over dis-
bursements is ascertained, and after setting aside so
much of said excess as is required for the increase in
policy reserves and other liabilities the balance is treated
as a resource, enabling the company thereafter to de-
mand from the policyholders less than the stipulated
premium. Each policyholder's share in this so-called
fund is then ascertained and before his next premium
falls due he is advised of the amount thereof, and that
the company, if he wishes to use it in abatement of
premium, will accept in full settlement of such premium
the difference between the premium written in his policy
and the amount standing to his account with the com-
pany which has arisen out of the previous premium pay-
ments. Unless used in the abatement of premiums the
policyholder may, if he desires, withdraw his share of
the so-called fund in cash, permit it to accumulate; or
this share is paid to him if he discontinues his policy, or
is paid in addition to the amount insured if the policy
becomes a death claim. For the first year of each policy
the company invariably collects the maximum premium
stipulated in the policy, and such premiums form part
of the company's taxable income for their respective
years. This method of calculating premiums and ascer-
taining and disposing of the excess at the end of each
year is practiced not only by the defendant company but
other mutual life insurance companies generally." One
of the by-laws of the defendant company thus provides:

"This policy shall participate in surplus and the com-
pany will annually determine and account for the por-

tion of the divisible surplus accruing thereto. The owner of this policy shall have the right in any year to have the current dividend arising from such participation applied to reduce the premium, to increase the amount insured, or to accumulate to its credit at 3 per cent. compound interest per annum, which accumulation will be payable at the maturity of the policy, or may be withdrawn at any premium anniversary. If no other option is selected dividends may be withdrawn in cash."

If the policyholder desires to have his share of the excess over and above the expenses for the year applied to the payment of the premium then maturing, the company's receipt shows that it has been so applied and designates the amount actually received by the defendant company. The accounting officers have made their settlements upon the theory that the defendant company has actually received the maximum premiums mentioned in the several policies, and has declined to deduct the amounts awarded the several policyholders as their respective shares of the excess of the maximum premiums over and above the actual and necessary expenses of the company.

The appeal entered to No. 31 C. D. 1913,
is for settlement of tax upon premiums
for the six months ending December 31,
1911. The accounting officers charge the
defendant company with the receipt of
the maximum premiums amounting to.$1,790,426.84
As matter of fact the company gave credit
for the excess over and above actual and
necessary expenses, ..................     106,554.31

And the company actually received only,..$1,683,872.53

The appeal entered to No. 32 C. D. 1913,
is for settlement of tax upon premiums
for the six months ending June 30, 1912.

The accounting officers charge the defendant company with the receipt of the maximum premiums amounting to,....$1,964,324.55

As matter of fact the company gave credit for the excess over and above the actual and necessary expenses, ..............   212,115.67

And the company actually received only..$1,752,208.88

The appeal entered to No. 33 C. D. 1913, is for settlement of tax upon premiums for the six months ending December 31, 1912. The accounting officers charge the defendant company with the receipt of the maximum premiums amounting to, ...............................$1,883,870.75

As matter of fact the company gave credit for the excess over and above actual and necessary expenses, ..................   170,455.11

And the company actually received only,..$1,713,415.64

The appeal entered to No. 144 C. D. 1913, is for settlement of tax upon premiums for the six months ending June 30, 1913. The accounting officers charge the defendant company with the receipt of the maximum premiums amounting to.....$2,073,455.56

As matter of fact the company gave credit for the excess over and above actual and necessary expenses, ..................   205,990.60

And the company actually received only..$1,867,464.96

The Act of June 1, 1889, P. L. 420, Sec. 24, provides that reports shall be made in writing by insurance companies "To the auditor general semi-annually upon the first days of July and January in each year, setting forth

the entire amount of premiums and assessments received by such company or association during the preceding six months, whether the said premiums or assessments were received in money or in the form of notes, credits or any other substitute for money, and every such company or association shall pay into the State treasury, semi-annually, on the last day of January and July, in addition to any other tax to which it may be liable under the 1st and 21st Sections of this act, a tax of 8 mills upon the dollar upon the gross amount of said premiums and assessments received from business transacted within this Commonwealth."

The question raised by these appeals is whether or not the money deducted by the defendant company from the maximum premiums mentioned in its policies, because of the sums credited to the several policyholders by reason of the excess of their previous contributions over and above all expenses, is to be deducted from the maximum premiums. The company has paid the 8 mill tax upon the amounts actually received by it, as per the above statements, and if the Commonwealth is not entitled to a tax upon the deductions made as above, there is now nothing due from the defendant company.

### DISCUSSION.

The statute imposes the tax upon premiums and assessments received by insurance companies, "either in money or in the form of notes, credits, or any other substitutes for money." The amount which the defendant company claims shall be deducted from the maximum premiums is not money received by the company nor is it notes or credits. It is not alleged that the company received notes for the whole or any part of this amount, nor that any credit was given the company for the whole or any part of this sum. Indeed no credit could possibly have been given to the company for it is not pretended that there was any obligation of the company upon which

credit could have been given by policyholders for the premiums payable by them respectively. The company simply had in its possession money due to its policyholders, which money the policyholders requested should be credited upon the premiums payable by them respectively, and it was accordingly done. The policyholders alone received credits. It is only credits received by the company which are taxable under the statute, and the company received no credits in any of these transactions with its policyholders. The maximum premiums named in the several policies were neither demanded nor received by the company. Under the terms of the contract the policyholders had the right to demand that their respective shares of their previous contributions over and above the actual and necessary expenses of the company should be credited upon the maximum premiums at each premium paying period, and that upon payment of the balance the policies should respectively be continued in force until the next premium paying period arrived.

The principle here involved was considered and decided by President Judge SIMONTON of this court in Commonwealth v. Penn Mutual Insurance Company, 1 Dauphin Repr. 233. The question there raised was whether these abatements upon premiums was to be regarded as earnings or income of the company taxable under the Act of May 1, 1868, P. L. 108, and it was held that they were neither earnings or income. In so concluding Judge SIMONTON uses the following language (p. 239):

"We think the so-called 'dividends to policyholders' are not net earnings or income and do not represent such earnings, and that defendant is not liable to tax in respect to them......It is strenuously contended by the able special counsel for the Commonwealth that because these abatements are entered on the books of the company as dividends to policyholders or surplus to policyholders they therefore represent net earnings or income,

and furnish a measure of the liability of the company to taxation.   Whatever these statements may be called, they are in reality what we have stated in the findings of facts.   The amounts they represent are mere negative quantities, abstract statements not of what is or is to be received or to come in, but what is not to be received. The calculations are made for the express purpose of determining how much of the amount which the company might receive shall not be received, and one of the items which make up the apparent amount upon the basis of which this calculation is made, is the sum which was abated and not received during the preceding year.   In short, the whole proceeding is merely a method by which the books of the company are made to show what would be the actual gross debtor and creditor accounts of the company if the whole amount of the premiums was collected and a part was afterwards returned to the policy-holders, while in fact it is neither collected nor returned. The reason for fixing the premium stipulated for at a higher rate than sufficient under ordinary circumstances to cover the risk is, of course, that the company may be strong enough to stand in case of extraordinary mortality among its members."

This decision of Judge SIMONTON was cited at length and approved by the Court of Appeals of Kentucky in Mutual Benefit Life Insurance Company v. Kentucky, 33 Ky. L. R. 338 (107 S. W. Repr. 802), in which the State of Kentucky by statute imposed "A two per cent. tax on all renewal premiums received in cash or otherwise" and it was held that abatements upon premiums were not taxable; the conclusion being thus stated (p. 343) :

"The difficulty which surrounds the appellant in this case grows out of its method of bookkeeping and its use of terms out of their ordinary signification.   What really happened in every case was that the stipulated premium was much larger than the company actually needed to carry the risk under ordinary conditions; but if extraordinary conditions should arise, the whole might be

needed. Thus, if an epidemic swept over the country the losses among the policyholders would perhaps be abnormal, and then the company would need the full amount of the contract premium. Now, in order to prepare in advance against such untoward contingencies of the future the company collected the first year the full amount of the premium and set aside so much of it as was overpayment, as a guaranty against misfortune; and then said to its policyholders: 'You need not pay hereafter the full amount of the stipulated premium, but may omit the overplus because we have already collected from you more than you should have paid under ordinary circumstances, and we are holding that as protection against extraordinary losses'......The company, on its books calls this a dividend, and pretends to credit the annual premium with it. Now, the truth is that this overpayment is not a dividend in any sense of the term; nor is the failure of the company to collect the full amount of the premium in after years a credit in any sense of the term. A sum of money applied as a credit can never be used for the same purpose again.''

We are satisfied that the deductions made from the maximum premiums as hereinbefore stated were never received by the defendant company either in money, notes, credits or otherwise, and that with respect to these sums the defendant company is not liable to the eight mill tax. It has paid this tax upon all the premiums which it actually received in money or otherwise, and we therefore have reached the following

### CONCLUSIONS:

1. The defendant company is not now indebted to the Commonwealth for tax upon gross premiums.

2. It is therefore now ordered that judgment be entered in each of the cases referred to in the foregoing caption in favor of the defendant and against the Com-

Opinion of Court below—Opinion of the Court. [252 Pa.
monwealth unless exceptions be filed within the time
limited by law.

(Signed) S. J. M. McCARRELL, J.

The Commonwealth filed exceptions to the opinion,
the court accordingly entered judgment in favor of the
defendant and subsequently overruled exceptions there-
to. The Commonwealth appealed.

*Error assigned,* inter alia, was in entering judgment in
favor of the defendant.

*Wm. M. Hargest,* Deputy Attorney General, with him
*Francis Shunk Brown,* Attorney General, for appellant.

*George Wharton Pepper,* with him *B. F. Pepper,* for
appellee.

PER CURIAM, March 6, 1916:

This judgment is affirmed on the opinion of the
learned judge below upon which it was entered.