METROPOLITAN LIFE INSURANCE COMPANY *v.* STATE
OF INDIANA.

[No. 23,103.   Filed June 20, 1917.]

1. STATUTES. — *Construction.* — *Departmental Interpretation.* — *Application.*—The rule that a long-continued construction of a statute by a governmental department which has governed the conduct of that department in its official administration of such statute, is entitled to consideration, can be invoked only where the language of the statute is doubtful or ambiguous. p. 410.

2. TAXATION. — *Foreign Insurance Companies.* — *Receipts.* — *Bonuses and Dividends.*—*Statute.*—Under §10216 Burns 1914, Acts 1891 p. 199, 222, taxing foreign insurance companies on gross receipts from premiums received in this State, less losses actually paid therein, where a foreign stock corporation issued life insurance policies for fixed premiums and thereafter declared bonuses or dividends from the company's surplus earnings, which the policy-holders might receive in cash, apply on future premiums or in purchasing paid-up insurance, such company is liable for taxes on the bonuses or dividends applied by policy-holders in payment of premiums or for the purchase of paid-up insurance. p. 411.

From Marion Superior Court, sitting as a court of claims (87,202) ; *V. G. Clifford, Linn D. Hay, W. W. Thornton, Theophilus J. Moll* and *John J. Rochford,* Judges.

Action by the Metropolitan Life Insurance Company against the State of Indiana.   From a judgment for the State, the plaintiff appeals.   *Affirmed.*

*S. D. Miller, F. C. Dailey, W. H. Thompson, W. H. H. Miller* and *C. C. Shirley,* for appellant.

*Evan B. Stotsenburg,* Attorney-General, *Leslie R. Naftzger* and *Wilbur T. Gruber,* for the State.

SPENCER, J.—It is provided by §10216 Burns 1914, Acts 1891 p. 199, 222, that: "Every insurance company not organized under the laws of this state, and doing business therein, shall, in the months of January and

July of each year, report to the auditor of state under oath of the president and secretary the gross amount of all receipts received in the state of Indiana on account of insurance premiums for the six months last preceding, ending on the last day of December and June of each year next preceding, and shall at the time of making such report pay into the treasury of the state the sum of three dollars on every one hundred dollars of such receipts, less losses actually paid within the state," or suffer certain penalties for failure to comply with the provisions of the statute.

During the month of January, 1912, appellant, which is an insurance company not organized under the laws of Indiana, reported to the auditor of state that during the last six months of the year 1911 it received from its policy-holders within this State on account of insurance premiums the sum of $883,379.54, and that during the same period of time it paid death losses in Indiana amounting to $205,580.71. A tax of three per cent. on the difference between these sums was thereafter duly paid into the state treasury. The report filed with the auditor, however, also showed that during the period in question a certain sum of $55,277.08, referred to as "dividends and industrial bonuses," had been applied by policy-holders of the company in reduction of their premiums, or in the purchase of additional paid-up insurance, and demand was made by the auditor for the payment of a three per cent. tax on this sum. To avoid the penalties prescribed by the statute appellant paid the additional tax, under protest, and instituted this action to recover the sum so paid. From an adverse finding and judgment below, appellant has prosecuted this appeal and insists that its motion for a new trial should have been sustained.

The evidence is substantially without dispute and discloses, in addition to the facts above stated, that, during

the period in question and prior thereto, appellant was a stock corporation engaged in the general business of writing life insurance on what is known as the level premium plan. Under this plan the amount of the periodic premium to be paid by the insured is definitely fixed in the contract of insurance and remains unchanged throughout the history of the policy. This premium is made up of two elements: (1) The net premium, which represents the expected cost of effecting the insurance, as determined with reference to the tables of mortality and interest; and (2) the "loading," or margin, which is added to the net premium in order to provide for the expenses of the business and to meet such unusual contingencies as may arise. Whenever the insurance company experienced a more favorable mortality than was expected, or succeeded in effecting substantial reductions in its expense rates, or received good returns from its investments, there arose a surplus fund of which it was considered equitable by appellant's officers to return a part to the policy-holders. The return made to the holder of an industrial policy was termed a "bonus," while the payment made to the holder of an intermediate or ordinary policy was designated as a "dividend," whether the policy was participating or nonparticipating. However, it must be borne in mind that no legal significance attaches to the use of either term under the circumstances in this case, nor is the fact material that some, though not all, of appellant's intermediate and ordinary contracts provided for the participation by the holder in the earnings of the business.

At the end of the year 1910, the company, on the basis of its financial condition at that time, determined the amount and scale of dividends and bonuses which should be paid in the year 1911, and then appropriated and set aside that amount as a liability to be discharged

through the disbursement thereof. Each policy-holder was notified of the amount of the bonus or dividend which had been allowed to him and, in the case of industrial business, the insured was given the option of accepting his bonus in cash or of having the same applied to the payment of future premiums. In the latter alternative, the company's agent would credit the policy-holder's premium receipt book with an amount equal to his bonus, without an actual payment on the part of the insured. The holder of an intermediate or ordinary policy was entitled to either of the options above referred to or he might apply his dividend to the purchase of paid-up additions to the face of his policy. In neither event was an actual payment of money made to appellant or its agent by the insured.

Under the facts as above set forth, the question arises whether the sum of $55,227.08, representing the amount of dividends and industrial bonuses which were thus applied during the last half of the year 1911 by policy-holders of appellant company, either in payment of obligations due under their contracts or for the purchase of additional paid-up insurance, is taxable as "receipts received in the state of Indiana on account of insurance premiums?"

Some reliance is placed by the attorney-general on the fact that for a number of years the statute in question has been interpreted by successive auditors of state as imposing a tax on funds of this character, which interpretation has been accepted by numerous foreign insurance companies, including appellant. It is true that the construction of a statute by a governmental department which, for a considerable period of time, has governed the conduct of that department in its official administration of such statute, may be judicially noticed, and such interpretation, although not of as high authority as a judicial interpreta-

tion, is, when not in conflict with the Constitution or the plain intent of the act, of great persuasive force and efficacy. *Arnett* v. *State, ex rel.* (1906), 168 Ind. 180, 80 N. E. 153, 8 L. R. A. (N. S.) 1192; *Board, etc.* v. *Bunting* (1887), 111 Ind. 143, 12 N. E. 151; *Logansport Credit Exchange* v. *Sands* (1913), 54 Ind. App. 562, 101 N. E. 19; *United States* v. *Graham* (1884), 110 U. S. 219, 3 Sup. Ct. 582, 28 L. Ed. 126; *Bloxham* v. *Consumers', etc., R. Co.* (1895), 36 Fla. 519, 540, 18 South. 444, 29 L. R. A. 507, 51 Am. St. 44; 15 R. C. L. 1110, §40. But it is equally true that the aid of contemporaneous practical or departmental construction can be invoked only where the language of the statute is ambiguous or doubtful. The doctrine has no application where the language of the act and the intent of the legislature are plain. *State* v. *Mutual Life Ins. Co.* (1910), 175 Ind. 59, 79, 93 N. E. 213, 42 L. R. A. (N. S.) 256; *Hord* v. *State* (1906), 167 Ind. 622, 79 N. E. 916; *Gray* v. *Foster* (1910), 46 Ind. App. 149, 159, 92 N. E. 7; *Whittemore* v. *People* (1907), 227 Ill. 453, 470, 81 N. E. 427, 10 Ann. Cas. 44. However, since, in the present case, the interpretation placed by the auditor on the statute under consideration is in harmony with the conclusions to which we are led as a matter of law, it is unnecessary to determine the applicability of the above principles to the facts in issue.

Appellant has cited and relies on a number of authorities which hold, in substance, that where a mutual insurance company, in its policy, stipulates 2. for a premium larger than is actually needed to carry the risks insured against under ordinary circumstances but which may be needed in case of extraordinary conditions, and, in order to provide in advance against such a contingency, collects as premium for the first year the full amount stipulated for and sets aside so much thereof as is over-payment as a guar-

·anty against misfortune; and then, for the premium for the succeeding years, does not collect the entire amount stipulated for, because of the sufficiency of the over-payment of the first year's premium to guard against additional risks, but designates that part which is not collected from the policy-holder as a "dividend" and so credits the same on the policy-holder's account, the company is not liable to taxation on the entire premium stipulated for in the policy but only for the amount actually collected; since that part of the premium which is designated as a dividend is not in fact a dividend, but merely an overcharge which was never collected from the policy-holder, and hence was not received by the company. *Mutual Benefit Life Ins. Co.* v. *Commonwealth* (1908), 128 Ky. 174, 107 S. W. 802; *Commonwealth* v. *Penn, etc., Ins. Co.* (1916), 252 Pa. 512, 97 Atl. 677; *Connecticut, etc., Ins. Co.* v. *Eaton* (1914), 218 Fed. 188; *Connecticut Mut. Life Ins. Co.* v. *Eaton* (1914), 218 Fed. 206; *Mutual, etc., Ins. Co.* v. *Herold* (1912), 198 Fed. 199; *Commonwealth* v. *Penn, etc., Ins. Co.* (1888), 1 Dauphin Co. Rep. (Pa.) 233.

It must be observed, however, that in each case above cited the insurance company either operated its business wholly on the mutual plan or conducted a mutual department, in which the question at issue arose. It should be noted further that in at least two jurisdictions the construction placed on the statute under consideration by the appellate tribunal was at variance with the interpretation previously adopted by the state insurance department and by the *nisi prius* court, and that in Kentucky the rule has since been modified by statute. *Northwestern, etc., Ins. Co.* v. *James* (1910), 138 Ky. 48, 127 S. W. 505; *In re Northwestern, etc., Ins. Co.* (1909), 36 Penn. Co. Ct. Rep. 100.

However, to treat the rule above stated as supported by the weight of authority, it is important to consider

on what principles it is based. These principles are thus clearly stated in the case of *Commonwealth* v. *Penn, etc., Ins. Co., supra,* at page 234, where the court had under consideration the methods used in computing and collecting insurance premiums under the mutual plan: "The rate of premium was fixed at a figure higher than that which experience had shown to be sufficient to meet the risk. The insured could not be called upon to pay more than the rate so fixed; he might not be called upon to pay so much. In fact he never was called upon, after the first year to pay all, but an abatement was made at the beginning of each year, the amount of which depended upon the calculations of the actuary applied to the treasurer's statement of the business of the preceding year; and in making this statement the treasurer always included in his figures, as though it had been received by the company, the amount of the abatement which had been made from the premiums of the preceding year, and which had not actually been received by the company. The amount of the abatement, thus ascertained by the calculations of the actuary, applicable to the premium of each policy holder, was then deducted from the amount of the premium stipulated for in the policy, and the balance only was collected and received by the company. These abatements are called, on the books of the company and in its annual statements and its reports to the insurance commissioner, 'dividends to policy holders' or 'surplus to policy holders.' But they are, in fact, just what we have stated above. * * * The calculations are made for the express purpose of determining how much of the amount which the company might receive shall not be received, and one of the items which makes up the apparent amount, upon the basis of which this calculation is made, is the sum which was abated and not received during the preceding year. In short, the

whole proceeding is merely a method by which the books of the company are made to show what would be the actual gross debtor and creditor account of the company if the whole amount of the premiums was collected and a part was afterwards returned to the policy holders, while in fact it is neither collected nor returned."

A mutual life insurance company is organized on a basis of furnishing life insurance at cost. It has no capital stock, which may be looked to under stress of unusual contingencies, and there is no such thing, strictly speaking, as dividends or profits connected with its business. In fixing its arbitrary level premiums the company overestimates the death rate and administration expenses and underestimates the earning capacity of its investments. At the end of the year, on examination of its accounts, it determines the approximate amount of the loading, or margin, which is contained in the premium as fixed by the policy and thereafter collects from year to year only so much of that premium as the conduct of the business renders necessary. The initial premium under the mutual plan, then, is made up, in part, of a true overcharge and subsequent allowance is made therefor, but under the stock plan different facts and circumstances are presented. Although the insurance premiums fixed by stock companies contain some "loading," in order to provide against unusual conditions, the amount of such loading is ordinarily much smaller than in the mutual policies and there is no contractual obligation, express or implied, which requires the insurance company to make allowance therefor, as an overpayment, in its collection of subsequent premiums. If, as a matter of business policy, founded in part on considerations of equity and treated also as an advertising investment, the company contracts or voluntarily elects to distribute a portion

of its surplus earnings among its policy-holders it may do so, but a return of that surplus to the corporate treasury in lieu of funds which would otherwise be collected on policy contracts will nevertheless constitute a receipt received on account of insurance premiums. A true abatement of premiums contemplates no alternative on the part of the insured but where, as in this case, he is given the option of receiving a "bonus" in cash and then paying his premium in full or of applying such bonus as a partial discharge of his contractual obligation and then paying the difference only, the transaction is substantially the same in either alternative (*Penn, etc., Ins. Co.* v. *Henry* (1915), 110 Miss. 402, 70 So. 452, 455), and constitutes, in effect, a return to the company's general funds of money which has been set aside and expended in discharge of a recognized liability. This fact is even more apparent in connection with the payment of contractual "dividends" on participating policies and the subsequent return of such dividends as a part of premium receipts. The time and place of their application on account of premium indebtedness due the company determine the right to tax such bonuses or dividends, and not the occasion of their appropriation by the company in the first instance. Nor is it a controlling fact that the surplus fund so appropriated is made up, in part, of the so-called "loading" or excess premium, since it is not the money which is taxed but the receipt of a credit by the company in exchange for a credit which it gives the insured. The whole question is one of contractual obligations and of property rights, rather than the economic source of particular funds, and unless, as in the mutual plan, there is a true abatement of premiums, the insurance company, under the statute at issue, is liable to taxation on all credits received from policy-

holders in this state on account of insurance premiums, whatever the form of such credits.

The distinction which we have drawn between stock and mutual companies is referred to in the 'case of *Mutual, etc., Ins. Co.* v. *Herold, supra,* at page 212, although the question is not there presented for decision, and we know of but one case which is not in harmony with the conclusion herein reached. In *Commonwealth* v. *Metropolitan Life Ins. Co.* (1916), 254 Pa. 510, 98 Atl. 1072, the Supreme Court of Pennsylvania approved, without discussion, the opinion of the trial court holding that bonuses and dividends credited to its policy-holders by this appellant are not taxable under the Pennsylvania statute. On reference to the opinion of the county court, however, it will be noted that the trial judge, without extended argument, relies expressly on his own decision in *Commonwealth* v. *Penn, etc., Ins. Co.,* later reported in 252 Pa. 512, *supra,* and fails to distinguish the fact that the insurance companies in the two cases were doing business on different plans and under different contractual relations.

Nor is the conclusion herein reached at variance with the fire insurance cases relied on by appellant. Fire insurance policies usually provide for their cancellation at the option of either party, in which event a return of the unearned premium is made to the insured and the company is not then liable to taxation on money which, in a true sense, is not a part of its revenue. *German Alliance Ins. Co.* v. *VanCleave* (1901), 191 Ill. 410, 61 N. E. 94. Judgment affirmed.

NOTE.—Reported in 116 N. E. 579. See under (1) 36 Cyc 1142; (2) 37 Cyc 1045.