## METROPOLITAN LIFE INSURANCE COMPANY v. STATE OF INDIANA.

[No. 24,024. Filed June 13, 1924.]

1. TAXATION.—*Foreign Insurance Companies.—Mutual Companies.—"Dividends" Credited to Policy Holders.—Statute.*— "Dividends" credited by a foreign mutual insurance company on premiums due from its policy holders, and used by them in reducing their premiums, are not "receipts" of the company within §10216 Burns 1914 (Acts 1891 p. 199, §67), and hence not taxable as a part of the "gross amount of all receipts received in the State of Indiana on account of insurance premiums", provided in that section.  p. 663.

2. INTEREST.—*Taxes Wrongfully Collected from Foreign Insurance Company.—Statute.*—A foreign insurance company which paid under protest sums of money demanded by the Auditor of State as taxes on the "receipts" of such company under the provisions of §10216 Burns 1914, Acts 1891 p. 199, §67, is entitled to recover interest at six per cent. on the several sums so paid from the several dates they were paid to the date of the finding of the court awarding recovery.  p. 666.

From Marion Superior Court, acting as Court of Claims (A3,519) ; *W. W. Thornton, Linn D. Hay, Solon J. Carter, Arthur R. Robinson* and *Theophilus J. Moll,* Judges.

Action by the Metropolitan Life Insurance Company against the State of Indiana.  From a judgment awarding to plaintiff an unsatisfactory amount, it appeals. *Reversed.*

*Samuel D. Miller, Frank C. Dailey, William H. Thompson* and *Albert L. Rabb,* for appellant.

*U. S. Lesh,* Attorney-General, *Connor D. Ross,* Deputy Attorney-General, and *Dale F. Stansbury,* for the State.

EWBANK, J.—Appellant recovered a judgment against the State of Indiana for $11,300.31, being the

amount which, under protest, it had been compelled by the Auditor of State to pay into the state treasury as taxes on the amount of "dividends" and "bonuses" with which it had credited its policy holders during certain years by way of a reduction of the premiums on their policies. But the trial court refused to allow interest on such taxes from the dates when the several installments were paid to the date of rendering judgment, which, at six per cent., would have amounted to $2,540.49. By exceptions to the overruling of its motion for a new trial, exceptions to the conclusion of law upon the special finding of facts, and exceptions to the overruling of its motion to modify the judgment, appellant challenged the refusal of the trial court to allow interest on the amount of taxes found to have been unlawfully exacted and paid under protest, and each ruling has been properly assigned as error. Appellee demurred to each paragraph of the complaint for alleged want of sufficient facts, and reserved an exception when the demurrer was overruled, and also excepted to the conclusion of law, and has assigned each of said rulings as a cross-error, under which it challenges the right of appellant to recover back any of the taxes paid.

The special finding recites the facts as alleged in the complaint with the addition of a few others put in issue by the answer and reply, and the same questions of law are presented by appellee's exception to the conclusion of law as by its demurrer. For convenience, we will first consider the cross-errors. The court found, in substance, that the plaintiff is, and since January 6, 1915, has been, a mutual life insurance company, organized and operating under the laws of the State of New York, without capital stock, all of its assets and earnings, in excess of expenses and death losses, belonging solely to its policy holders, and has so regulated its premium charges for insurance as to leave in the

hands of its policy holders that part of the premiums for each current half year, as estimated and fixed by the policy contract, which actual experience for the preceding half year has shown will not be needed to pay expenses and death losses in such period; that the premiums contracted for, as fixed by each policy, were intended to be large enough to meet the highest estimated expenses and death losses for any half year, and were in excess of such expenses and losses in some half years, and that, under the law creating said mutual insurance company, the policy holders were entitled to such reduction as matter of right; that from the time of its organization in 1866, down to January 6, 1915, appellant had been a life insurance corporation organized under the laws of the State of New York, having a capital stock; but, on said date, under authority of and in conformity with the laws of New York, appellant purchased all of said capital stock, and canceled the same, and reorganized as a mutual company; that since 1871, appellant has been engaged in the life insurance business in the State of Indiana, having fully complied with the law and become authorized so to do, and in 1916, 1917 and 1918 had an established business in said state with more than $55,000,000 of insurance in force, on which it was collecting annually $2,500,000 or more of premiums, out of a still larger amount of annual premiums stipulated for by its policies; that at the end of each six months in 1916, 1917 and the first half of 1918, appellant made a sworn report to the Auditor of State of the amounts actually paid to it by its policy holders as premiums, and of the amounts of death losses paid by it in the preceding half year within this state, and also of the amounts in which the premiums stipulated for in the several policies were reduced by credits given to the respective holders thereof, by reason of the experience of the preceding six months having shown

that such amounts would not be required to meet the expenses and death losses during such current half year; that appellant paid into the treasury of the State of Indiana, at the time of making its report, $3 of every $100 of the gross sum actually received as premiums, less death losses paid; but in each of the five half years (as alleged in the several paragraphs, respectively), the amounts credited under the name of "bonuses" or "dividends" on the premiums called for by the outstanding policies, which were never actually paid to nor received by appellant, amounted to a designated sum (the total exceeding $370,000) ; that the Auditor of State demanded payment of a tax of three per cent. on the amounts of these "bonuses" or "dividends" with which the policy holders were so credited, although no part of them actually was paid to or received by appellant company, and by threats to revoke appellant's certificate of authority to do business in the State of Indiana, and threats to enforce against appellant a penalty of $100 per day for nonpayment, compelled appellant to pay the tax on the amounts of said credits, in a total sum for all the half years exceeding $11,000, which appellant did under protest; that of the "dividends" and "bonuses" with which appellant credited its policy holders, some (in amounts stated) were used to purchase paid up insurance from appellant, the premiums on the policies for which they were credited being paid in full with money; that in the period from January 1, 1916, to June 30, 1918, appellant paid into the state treasury, under protest, as constituting a tax of three per cent. upon dividends credited to its policy holders and used in the reduction of their premiums, but not paid to appellant in money nor received by it, the total amount of $11,300.31, besides paying, without protest, the full tax of three per cent. on all premiums actually paid to and received by it from policy holders, less losses paid

by it within this state; that most of the policies on which such dividends were credited had been issued before appellant was changed to a mutual company, and no new contractual relations were entered into by appellant with its policy holders thereafter, except so far as its conversion into a mutual company imposed new obligations; and that premiums were collected and rebates were allowed thereon by way of dividends and bonuses in favor of policy holders in the same manner after it became a mutual company as before, but that the dividends so credited and used in the reduction of premiums were all allowed by reason of earnings of appellant after it became a mutual company; that the sum of $11,300.31 was made up of five payments of amounts, as stated, on dates named (from which interest may be calculated, if appellant be entitled to recover interest). The conclusion of law was "that plaintiff is entitled to recover the sum of $11,300.31, with costs." The statute requires every foreign insurance company doing business in this state to report semiannually under oath, "the gross mount of all receipts received in the State of Indiana on account of insurance premiums", and "to pay into the treasury of the state the sum of $3 on every $100 of such receipts, less losses actually paid, within the state." §10216 Burns 1914, Acts 1891 p. 199, §67.

While appellant was still a stock company, the Supreme Court of Indiana held that it was not entitled to deduct from the premiums on which taxes must be paid the amount of bonuses or dividends credited to its policy holders by way of a reduction of the current premiums. Devoting half a dozen printed pages to drawing a distinction between stock companies and mutual companies, and stating that the weight of authority was to the effect that sums credited to its policy holders by a mutual insurance company as an abate-

ment of that much of premiums due from them were not taxable as a part of its gross "receipts", the court said: "Although the insurance premiums fixed by stock companies contain some 'loading', in order to provide against unusual conditions, the amount of such loading is ordinarily much smaller than in the mutual policies and there is no contractual obligation, express or implied, which requires the insurance company to make allowance therefor, as an overpayment, in its collection of subsequent premiums. If, as a matter of business policy, founded in part on considerations of equity and treated also as an advertising investment, the company contracts or virtually elects to distribute a portion of its surplus earnings among its policy-holders, it may do so, but a return of that surplus to the corporate treasury in lieu of funds which would otherwise be collected on policy contracts will nevertheless constitute a receipt received on account of insurance premiums." *Metropolitan Life Ins. Co.* v. *State* (1917), 186 Ind. 407, 414, 415, 116 N. E. 579.

But in that case, the court also said: "A mutual life insurance company is organized on a basis of furnishing life insurance at cost. It has no capital stock, which may be looked to under stress of unusual contingencies, and there is no such thing, strictly speaking, as dividends or profits connected with its business. In fixing its arbitrary level premiums the company overestimates the death rate and administration expenses and underestimates the earning capacity of its investments. At the end of the year, on examination of its accounts, it determines the approximate amount of the loading, or margin, which is contained in the premium as fixed by the policy and thereafter collects from year to year only so much of that premium as the conduct of the business renders necessary. The initial premium

under the mutual plan, then, is made up, in part, of a true overcharge and subsequent allowance is made therefor, but under the stock plan different facts and circumstances are presented." *Metropolitan Life Ins. Co.* v. *State, supra.*

And the court there cited with approval numerous authorities to the effect that dividends credited by a mutual insurance company on premiums due from its policy holders, and used by them in reducing by that much the amounts actually to be paid as premiums, are not "receipts" of the company, and therefore are not taxable as being part of the "gross amount of all receipts received in the State of Indiana on account of insurance premiums", within the meaning of the statute, §10216 Burns 1914, *supra.* The great weight of authority is to this effect, and we think it is the correct rule. *Mutual Benefit Life Ins. Co.* v. *Commonwealth* (1908), 128 Ky. 174, 107 S. W. 802; *Commonwealth* v. *Penn., etc., Ins. Co.* (1888), 1 Dauphin Co. Rep. (Pa.) 233; *Com. of Pa.* v. *Penn Mut. L. Ins. Co.* (1916), 252 Pa. 512, 97 Atl. 677; *Connecticut General Life Ins. Co.* v. *Eaton* (1914), 218 Fed. 188; *Connecticut Mutual Life Ins. Co.* v. *Eaton* (1914), 218 Fed. 206; *Mutual Benefit Life Ins. Co.* v. *Herold* (1912), 198 Fed. 199; *State, ex rel.,* v. *Wilson* (1918), 102 Kans. 752, 172 Pac. 41, L. R. A. 1918D 955 and note; *State, ex rel.,* v. *Hyde* (1922), 292 Mo. 342, 241 S. W. 396; *Mutual Ben. Life Ins. Co.* v. *Richardson* (1923), 219 Pac. (Cal.) 1003; *Penn Mutual Co.* v. *Lederer* (1920), 253 U. S. 523, 40 Sup. Ct. 397, 64 L. Ed. 698. No error was committed in overruling appellee's demurrer to the several paragraphs of the complaint, and its exception to the conclusion of law was not well taken.

But being entitled to recover back the money which

the Auditor of State, by threats, had compelled it to pay as taxes on sums not actually received by it, was appellant entitled to interest on the money so paid?

It is generally held that where the state has consented to be sued on a contract, no more can be recovered than what the state clearly has contracted to pay. Thus, where the state had promised to pay a sum of money, with interest at a fixed rate, payable semi-annually, and for a series of years had failed to pay any interest, it was held that only the face of the original debt, with simple interest thereon at the stipulated rate, could be recovered, and not interest on the delayed payments of interest. *Carr, Aud.,* v. *State* (1891), 127 Ind. 204, 219, 26 N. E. 778. And where bonds of the state were paid, but the interest coupons detached therefrom, which contained no promise to pay interest, remained unpaid, and many years afterward, suit was brought against the state on such coupons, it was held that interest could not be recovered. *Molineux* v. *State of California* (1895), 109 Cal. 378, 42 Pac. 34, 50 Am. St. 49; *Sawyer* v. *Colgan* (1894), 102 Cal. 283, 36 Pac. 580. And where the state promised to pay a sum of money, but did not promise to pay interest, or did not promise to pay interest after maturity of the debt, the right of recovery was strictly limited by the terms of the contract. *United States* v. *North Carolina* (1890), 136 U. S. 211, 10 Sup. Ct. 920, 34 L. Ed. 336; *South Dakota* v. *North Carolina* (1903), 192 U. S. 286, 24 Sup. Ct. 269, 48 L. Ed. 448; *State, ex rel.,* v. *Board of Public Works* (1881), 36 Ohio St. 409.

And even where a public officer who acted for the state in making a contract on its behalf made a promise, in the name of the state, to pay interest on a debt incurred for property purchased, it was held that the promise to pay interest could not be enforced in the absence of any law authorizing it to be made. *Audi-*

*torial Board* v. *Arles* (1855), 15 Tex. 74; *Jobe* v. *Urquhart* (1912), 102 Ark. 470, 143 S. W. 121, Ann. Cas. 1914A 351.

But in actions to recover back money unlawfully exacted in the name of the state by a public officer, of which the state has had the possession and use, and of the use of which the owner has been deprived since it was so paid under compulsion, a different rule has been applied. For many years, the Supreme Court of the United States has uniformly held that "in suits against collectors to recover moneys illegally exacted as taxes and paid under protest * * * interest is recoverable without any statute to that effect, and this, although the judgment is not to be paid by the collector but directly from the treasury." *Erskine* v. *Van-Arsdale* (1872), 15 Wall. (U. S.) 75, 77, 21 L. Ed. 63; *Redfield* v. *Bartels* (1891), 139 U. S. 694, 11 Sup. Ct. 683, 35 L. Ed. 310; *Nat'l Volunteer Home* v. *Parrish* (1913), 229 U. S. 494, 496, 33 Sup. Ct. 944, 57 L. Ed. 1296; *Billings* v. *United States* (1914), 232 U. S. 261, 286, 34 Sup. Ct. 421, 58 L. Ed. 596; *State Line & S. R. Co.* v. *Davis* (1915), 228 Fed. 246, 250; *Haiku Sugar Co.* v. *Johnstone* (1918), 249 Fed. 103, 109, 161 C. C. A. 155; *International Paper Co.* v. *Burrill* (1919), 260 Fed. 664, 667. The rule thus adopted is just and equitable and should be followed in the absence of any positive law to the contrary.

The statute, by authority of which appellant brought this action against the state and the Superior Court rendered the judgment appealed from, confers upon any person having or claiming to have a money demand against the state, such as this one, the right to commence a suit against the state to recover thereon, and then provides that "jurisdiction is hereby conferred upon said Superior Court of Marion County, Indiana, to hear and determine such actions, and said court shall

be governed by the laws, rules and regulations which govern said Superior Court in civil actions in the making up of issues, trial and determination of said causes, except that the same shall be tried by all the judges of said court sitting together without a jury." §1485 Burns 1914, Acts 1895 p. 231, §1.

In the trial and determination of an ordinary civil action to recover money which the defendant, by a species of duress, had wrongfully exacted and withheld from the plaintiff, it would be the duty of the court, upon rendering judgment for the money so taken, to include interest at the rate of six per cent. per annum for the time it was withheld. And if statutory authority for the allowance of interest were necessary, we think the language quoted confers such authority. *Railroad Co.* v. *Board of State Auditors* (1894), 102 Mich. 500, 503, 60 N.•W. 971; *Commonwealth* v. *Collins* (1876), 75 Ky. (12 Bush.) 386; *Commonwealth* v. *Lyon* (1903), 24 Ky. Law Rep. 1747, 72 S. W. 323, 324; See *Schnull* v. *Indianapolis, etc., R. Co.* (1921), 190 Ind. 572, 577, 131 N. E. 51.

Upon the facts found, appellant was entitled to recover interest on the several sums of money from the several dates when they were paid under protest
2. to the date of the finding, and appellant's exception to the conclusion of law should have been sustained.

The judgment is reversed, with directions to the trial court to restate its conclusions of law in conformity with this opinion, and to render judgment accordingly.