NEW YORK MAIL & NEWSPAPER TRANSP. CO. et al. v. ANDERSON,
Internal Revenue Collector.

(Circuit Court of Appeals, Second Circuit.　April 11, 1916.　On Motion for Interest, May 9, 1916.)

No. 153.

1. CORPORATIONS ⊜459—POWERS—LEASE OF PROPERTY.
    A corporation, unless prohibited by explicit terms in its grant of power, may let its property for a limited term of years.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1811, 1812; Dec. Dig. ⊜459.]

2. CORPORATIONS ⊜459—INTERNAL REVENUE ⊜9—EXCISE TAX ON CORPORATIONS—LEASE OF PROPERTY—VALIDITY.
    Two corporations, chartered by special acts of the New York Legislature to construct and operate pneumatic tubes between places in the state for the conveyance of mails, newspapers, and parcels, each owned and operated tubes connecting the general post office in Manhattan with branch offices and different places, and used exclusively for transportation of mails. By the action of the Post Office Department bids were invited for carrying of mails by pneumatic tubes, but subject to the requirement that but one bid should be made for the service of the tubes owned by such two corporations, whereupon one company leased all of its property for a term of years to the other, which secured the contract and performed the required service. Held, that such lease was not ultra vires on the part of the lessor, but was valid, and that on its execution the lessor ceased doing business, within the meaning of Corporation Tax Law Aug. 5, 1909, c. 6, § 38, 36 Stat. 112 (Comp. St. 1913, § 6300), and was not subject to the excise tax thereby imposed.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1811, 1812; Dec. Dig. ⊜459; Internal Revenue, Cent. Dig. §§ 13–28; Dec. Dig. ⊜9.]

3. INTERNAL REVENUE ⊜38—SUIT TO RECOVER TAX—LIMITATION.
    Under Rev. St. §§ 3226–3228 (Comp. St. 1913, §§ 5949–5951), a suit for recovery of an internal revenue tax alleged to have been erroneously or illegally assessed or collected cannot be maintained, unless a claim for refunding of the tax is presented to the Commissioner of Internal Revenue within two years after its payment.
    [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. ⊜38.]

4. INTERNAL REVENUE ⊜38—RECOVERY OF TAX PAID—JUDGMENT—INTEREST.
    On recovery of a judgment against a collector of internal revenue for the amount of an internal revenue tax illegally collected, the plaintiff is entitled to have the judgment state that it is with interest.
    [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84; Dec. Dig. ⊜38.]

---

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Southern District of New York.

Action at law by the New York Mail & Newspaper Transportation Company and the New York Pneumatic Service Company against Charles W. Anderson, Collector of Internal Revenue for the Second District of New York. From the judgment, both parties bring error. Affirmed.

The parties will be referred to as the Mail Company, the Pneumatic Company and the Collector. Mail Company and Pneumatic Company (plaintiffs below) brought an action against the Collector of Internal Revenue for the recovery of corporation excise taxes alleged to have been erroneously collected. The complaint contains four causes of action, for taxes paid, respectively, for the years 1912, 1911, 1910, and 1909. By stipulation the case was tried without a jury, and after the trial the court filed an opinion, and also findings of fact and conclusions of law. Thereupon judgment was entered for plaintiffs on the first and second causes of action, and for defendant on the third and fourth causes of action. The first and second causes of action (for 1912 and 1911 taxes) raised the single question whether the Mail Company was carrying on or doing business within the meaning of section 38 of the act of August 5, 1909 (36 Stat. 112). The court below held that the Mail Company was not doing business during the years in question, and was therefore not taxable, and to review this ruling defendant brings error. The court below dismissed the third and fourth causes of action (for 1910 and 1909 taxes) on the ground that the time of the applicable statute of limitations had expired, and on the judgment of dismissal plaintiffs assign error.

A. O. Townsend, of New York City, for plaintiff New York Mail & Newspaper Transp. Co.

H. Snowden Marshall, U. S. Atty., and B. A. Matthews, Asst. U. S. Atty., both of New York City, for defendant.

Before COXE and ROGERS, Circuit Judges, and MAYER, District Judge.

MAYER, District Judge (after stating the facts as above). The material part of the statute is as follows:

"Every corporation * * * engaged in business in any state or territory of the United States * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation * * * equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year." Comp. St. 1913, § 6300.

In October, 1906, the Mail Company made a 10-year lease (with optional renewal for 10 or 20 years) with the Pneumatic Company, by which it demised all of its plant, property, and franchises, excepting only its right to be a corporation and its interest in the reversion and in the covenants of the lease. If this lease was valid, the Mail Company was not taxable, for the District Court correctly found as a fact that it was not doing business. Flint v. Stone Tracy Co., 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; McCoach v. Minchill, etc., Railway Co., 228 U. S. 295, 33 Sup. Ct. 419, 57 L. Ed. 842.

It is contended that the lease was void, because ultra vires and against public policy. Whether the lease can be attacked in this action on the ground that it is ultra vires need not be determined, because

an examination of its provisions and of the character of the Mail Company demonstrates that the company had full power to enter into the lease. The Mail Company was organized under a special act of the New York Legislature approved March 21, 1893, with general powers—

"to construct, maintain and operate ·pneumatic tubes and other devices for the speedy transmission and delivery of the mails, newspapers and parcels within and between cities of this state, and to do the general business of delivery and transmitting the mails, newspapers and parcels within and between the cities of this state and to make such charges therefor as it may agree by public or private contract." Laws 1893, c. 164, § 1.

Paragraph 5 of the act empowers the corporation, "without other or further authority of law or ordinance," to locate, construct, maintain, and operate tubes between the central post office and branch post office and stations and newspaper offices in the cities of New York, and to convey and transport and to deliver the United States mails, newspapers, and parcels. This paragraph gives the corporation power of eminent domain to enable it—

"to accomplish the purposes for which this charter is given or in the exercise of the powers herein conferred, which are hereby expressly declared to be a public purpose and their use by said corporation a public use."

The Pneumatic Company is a reorganization of the Tubular Dispatch Company and possesses the same powers. The Tubular Dispatch Company was organized under the act of May 9, 1874 (Laws 1874, c. 400), as amended by the act of June 7, 1895 (Laws 1895, c. 977), with powers substantially similar to those of the Mail Company.

On October 16, 1906, the Mail Company owned a line of pneumatic tubes between the general post offices in the boroughs of Manhattan and Brooklyn, New York City, which tubes have always been used exclusively for the transportation of United States mails. The Pneumatic Company at that time was the owner of a line of pneumatic tubes between the general post office in the borough of Manhattan and the Wall Street station, and between the Wall Street station and the custom house, and between the general post office and the Grand Central station, which tubes, like those of the Mail Company, have always been used exclusively for the transportation of the United States mails. On July 27, 1906, the Post Office Department issued a request for bids for carrying the mails by pneumatic tubes. This request contained a requirement that there should be but one bid for service on the lines then owned by the Mail Company and the Pneumatic Company, respectively

[1] In order to make it possible for one of the companies to submit a bid covering its own lines, as well as the lines of the other, the Mail Company on October 16, 1906, entered into the lease, here discussed, with the Pneumatic Company. The lease stated the yearly rental in detail (which need not be here set forth); it constituted the lessee the irrevocable attorney of the lessor in language long familiar in corporate leases, and as matter of caution contained a well-known clause to the effect that, if any provision shall be adjudged invalid or ultra vires, the same shall not affect the validity of any other provi-

sion. In brief, the instrument has all the characteristics of a lease, and none of the characteristics of an agency contract. That a corporation, unless prohibited by explicit terms in the grant of power, can let its property for a limited term of years, is elementary, or, as the District Judge said, "the power to sell implies the power to lease."

[2] But it is argued that by virtue of the powers conferred by the New York Legislature the Mail Company owed a duty to the public which prevented it from authorizing any other person, whether individual or corporate, from doing that for which it was organized. This contention proceeds upon the theory that the Mail Company was what counsel for the Collector calls a public service corporation. We think it unnecessary to concern ourselves with academic inquiries, because of the common-sense rule aptly and concisely stated in Gause v. Commonwealth Trust Co., 196 N. Y. 134, 145, 89 N. E. 476, 479 (24 L. R. A. [N. S.] 967), where the court said:

"The authority of a corporation to perform a particular act is always dependent to a very considerable extent on the facts and circumstances existing at the time when it is proposed to perform the act."

Here the United States, acting through its Post Office Department, required that but one bid be made for an important service to be rendered within a certain described territory. It compelled either the Pneumatic or the Mail Company to be the sole contractor, and, now that its requirement has been fully complied with and the service has been rendered in conformity therewith, it urges that the very act it insisted upon was beyond the power of one of the corporations which otherwise could have been a bidder.

Whatever the obligations of the Mail Company may be to the people of the state of New York, it is apparent that they have been fulfilled; for the lease by the Mail Company has made possible the performance of the principal and important duty for which it was organized, and has enabled the United States to obtain the particular service which it desired. It follows, therefore, if it be assumed, though not decided, that the validity of this lease can be attacked in this action, and if it be assumed, though not decided, that the Mail Company is a so-called public service corporation, that the lease, nevertheless, was not ultra vires the Mail Company.

[3] We now come to the taxes of 1909 and 1910. The 1909 tax was paid June 28, 1910, but claim for refund was not filed until June 10, 1913, nearly three years thereafter. The 1910 tax was paid June 8, 1911, but claim for refund was not filed until June 10, 1913, two years and one day (excluding Sunday, June 8, 1913) thereafter. The relevant sections of the United States Revised Statutes are as follows:

"Sec. 3226. No suit shall be maintained in any court for the recovery of any internal tax alleged to have been erroneously or illegally assessed or collected * * * until appeal shall have been duly made to the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof, and a decision of the Commissioner had been had therein: Provided, that if such decision is delayed more than six months from the date of such appeal, then the said suit may be brought, without first having a decision of the Commissioner at any time within the period limited in the next section.

234 F.—38

"Sec. 3227. No suit or proceeding for the recovery of any internal tax alleged to have been erroneously or illegally assessed, or collected, * * * shall be maintained in any court, unless the same is brought within two years next after the cause of action accrued. * * . * "

"Sec. 3228. All claims for the refunding of any internal tax alleged to have been erroneously or illegally assessed or collected, * * * must be presented to the Commissioner of Internal Revenue within two years next after the cause of action accrued. * * * "

Sections 3226, 3227 and 3228 of the Revised Statutes (Comp. St. 1913, §§ 5949–5951) must be read together, and, when so read, provide a simple and orderly system whereby an aggrieved taxpayer may sue to recover taxes wrongfully collected.

In the first place, under section 3226, no suit can be maintained unless the taxpayer appeals to the Commissioner of Internal Revenue. This appeal under section 3228 must be presented to the Commissioner of Internal Revenue within two years after the cause of action accrued. Under section 3227 no suit can be maintained unless brought within two years next after the cause of action accrued. Under section 3228 the accrual of the cause of action is at the date when the tax is illegally assessed or collected. Obviously the wrongful act was done when the United States, acting in this instance through the Collector, received the money in payment of the tax. Under section 3227, the date of accrual is the date when the Commissioner of Internal Revenue decides adversely to the taxpayer. Of course, under that section the taxpayer need not wait longer than six months in the event that the Commissioner delays his decision.

To illustrate, therefore, with the precise facts in the case at bar: On June 28, 1910, the Mail Company paid the Collector the tax for the year 1909. The appeal to the Commissioner of Internal Revenue should have been made on or before June 28, 1912, but was not made until June 10, 1913. On June 8, 1911, the Mail Company paid the Collector the tax for the year 1910. The appeal to the Commissioner of Internal Revenue should have been made on or prior to June 8, 1913, but was not made until two days later, to wit, June 10, 1913. Thus the condition precedent with which it was necessary to comply before the Mail Company could maintain a suit was not complied with, and no cause of action ever accrued for the years 1909 and 1910 in favor of the Mail Company against the Collector.

If, to illustrate, an appeal in those cases had been presented to the Commissioner of Internal Revenue within two years, say on or before June 8, 1912, and on or before June 9, 1913 (June 8, 1913, being a Sunday), respectively, then the Mail Company under section 3227 would have been in time if suit had been commenced on or before June 8, 1914, and June 8, 1915, respectively. Merck v. Treat, 174 Fed. 388, 98 C. C. A. 606.

The answer of the Collector to the third and fourth causes of action, involving the taxes of 1909 and 1910, is a sufficient answer. The defense might have been pleaded in a clearer way; but when the Collector alleged that the cause of action "did not accrue within two years before the commencement of this action" he was right, for the reason that the cause of action never accrued. The findings of the

District Court (which the Mail Company contends are inconsistent) fully set forth the necessary facts. See Nos. 1 and 2 at pages 58 and 59 of the record, and No. 4 at page 60.

The judgment is affirmed.

## On Motion for Interest.

Before COXE, WARD, and ROGERS, Circuit Judges.

PER CURIAM. **[4]** The sole ground for opposing the motion for interest is that, though the action is nominally against the Collector, it is actually against the United States. We think the plaintiff is entitled to have the judgment state that it is with interest. Whether it can be collected or not is a matter with which we are not now concerned.