PRUDENTIAL INS. CO. OF AMERICA v. HEROLD, Collector of Internal Revenue.

(District Court, D. New Jersey. February 8, 1918.)

1. COURTS ☞96(1)—PRECEDENTS—BINDING FORCE.

A federal District Court is bound by decisions of the Circuit Court of Appeals of that circuit.

2. INTERNAL REVENUE ☞9—CORPORATION EXCISE TAXES—INCOME.

A joint-stock company engaged in writing industrial and also life insurance on the level premium plan adopted the practice, the premiums charged exceeding the cost of the insurance, of returning the excess to policy holders as so-called dividends which could be used to reduce renewal premiums or to purchase paid-up additions to the policies already mentioned. Only a few of the company's policies were participating, and the payment of such dividends was voluntary as to all other policy holders. *Held* that, notwithstanding the payment of the so-called dividends was to a great extent voluntary, those amounts should not be added to the company's gross income for tax under Corporation Excise Tax of 1909 (Act Aug. 5, 1909, c. 6, § 38, 36 Stat. 112), imposing taxes on corporate income.

3. INTERNAL REVENUE ☞9—CORPORATE INCOME.

Corporation Excise Tax Act of 1909 declares that the net income of corporations engaged in the insurance business shall be ascertained by de-

ducting from the gross income, among other items, the net addition, if
any, required by law to be made within the year to reserve funds. New
Jersey corporations authorized to do insurance business are required to
file annual statements in such form and containing such matters as the
Commissioner of Banking and Insurance shall prescribe, who is in return
required to annually cause a valuation to be made of all outstanding poli-
cies of every life insurance company. Pursuant to that law and regula-
tion of the commissioner, a New Jersey corporation engaged in writing
life and industrial insurance was required to make additions to its re-
serve funds for all business written including those policies on which the
premiums had not been paid at the time of making the valuation. *Held*
that, as such sums paid into the reserve could not be used by the corpo-
ration as income, they should not be considered in computing its income
for taxation, for, in case the policies on which premiums were due lapsed,
sums set aside as a reserve therefor would in succeeding years become
available as income and subject to taxation.

At Law. Action by the Prudential Insurance Company of America
against Herman C. H. Herold, Collector of Internal Revenue for the
Fifth District of New Jersey, to recover alleged excess taxes exacted
under the Corporation Excise Tax Law of August 5, 1909. Judgment
for plaintiff.

Lindabury, Depue & Faulks, of Newark, N. J., for plaintiff.
Charles F. Lynch, U. S. Atty., of Newark, N. J., and Joseph L. Bo-
dine, Asst. U. S. Atty., of Trenton, N. J., for defendant.

HAIGHT, District Judge. The plaintiff seeks to recover certain
moneys which it claims were illegally assessed and exacted from it, by
way of taxes, under the Corporation Excise Tax Law of August 5,
1909 (36 Stat. L. 112, c. 6, § 38). The case was tried without a jury,
pursuant to sections 649 and 700 of the Revised Statutes (U. S. Comp.
Stat. 1916, §§ 1587, 1668). By reason of a stipulation entered into be-
tween the parties, and the abandonment by the plaintiff of any claim to
recover on certain items referred to in the stipulation, the questions to
be decided have been reduced to two. They will hereafter appear.

[1, 2] 1. The plaintiff is a life insurance company, having been in-
corporated under the laws of the state of New Jersey, in 1873. It was
the first insurance company in America to do what has now come to be
known as an "industrial life insurance business." That was exclusively
its business until 1886. In that year it began to issue ordinary life in-
surance policies also. Practically all of the latter were of the partici-
pating kind up until 1907. The industrial policies were, however, non-
participating until 1896. In the latter year it inaugurated the practice
of issuing some industrial participating policies, and continued to do so
until 1907, in which year, because of certain legislation in New Jersey,
it discontinued the practice of issuing participating policies (both ordi-
nary and industrial); but, of course, it was obliged to, and did, continue
to meet its obligations on the participating policies which it had already
written. In 1896, although under no legal obligation to do so, it began
to award so-called "dividends" to holders of nonparticipating policies,
both industrial and ordinary, and permitted them to be used by the in-
sured either to reduce the amount of future premiums or to secure addi-
tional paid-up insurance. This course was adopted, both because it was
considered that good business judgment required it, especially in view

of criticism which had arisen in connection with the excessive cost and heavy lapse rate of the industrial insurance feature of the plaintiff's business, and because it seemed to the plaintiff's directors only fair and just that this should be done, as the premiums, which had theretofore been paid by the industrial policy holders, especially in the early years of the company's existence, had proved to be considerably in excess of the cost of that insurance.

It seems entirely clear that, when the rates were first fixed, it was thought that they might prove to be excessive and that a future retroactive adjustment was contemplated, if such should prove to be the fact. As the plaintiff was the first company to engage in industrial life insurance in America, it had, in the beginning, no standards, either in respect to expenses or mortality, by which it could be guided in the fixing of premiums. I shall not attempt to discuss the method or methods by which insurance premiums are ordinarily fixed, or how and out of what funds the so-called "dividends" to policy holders are ordinarily declared, because, as these have so often been stated in the reported cases, especially those to be hereinafter referred to, it would unnecessarily lengthen this opinion to do so. It is sufficient to say that plaintiff has always conducted its business on what is known as the "level premium plan," and the so-called "dividends" awarded to policy holders have been declared from funds accumulated in the same manner as is set forth in the opinion of this court in Mutual Benefit Life Ins. Co. v. Herold (D. C.) 198 Fed. 199. The plaintiff was, however, from the time of its incorporation, up to and including the years when the taxes in question were assessed, a stock company, as distinguished from a mutual company. In its returns for the years 1909, 1910, and 1911, filed pursuant to the before-mentioned act of August 5, 1909, it failed to include in its gross income the amounts which it had allowed, by way of the so-called "dividends," to policy holders—both participating and nonparticipating—merely to reduce renewal premiums and to purchase paid-up additions to policies already existing, as before mentioned. The Commissioner of Internal Revenue, however, added these amounts to the plaintiff's gross income for these years and assessed the tax, provided for in the before-mentioned act, against the plaintiff thereon. Such additional tax was paid, the plaintiff first having taken the necessary steps to procure its return, if illegally assessed.

It is the object of this suit to recover the amounts thus assessed and paid. The first question, therefore, is whether the amounts allowed by the plaintiff to policy holders out of the before-mentioned accumulated funds, merely to reduce renewal premiums and to purchase paid-up additions to existing policies, are taxable, under the before-mentioned act, as "income received" by the plaintiff during the years in question. It is apparent that unless the fact that the plaintiff was a stock company, as distinguished from a mutual company, and the fact that it was under no legal obligation to make any returns or concessions to the policy holders on some of its policies differentiates it, the case comes clearly within the before-mentioned decision of this court, rendered by the late Judge Cross in Mutual Benefit Life Ins. Co. v. Herold, supra. That decision was affirmed by the Circuit Court of Appeals of the

Third Circuit in Herold v. Mutual Benefit Life Ins. Co., 201 Fed. 918, 120 C. C. A. 256, and a certiorari to review it was denied by the Supreme Court, 231 U. S. 755, 34 Sup. Ct. 323, 58 L. Ed. 468. While that case is, of course, standing alone, binding upon me, it is proper to observe that it has since been followed, in Connecticut Gen. Life Ins. Co. v. Eaton (D. C. Conn.) 218 Fed. 188, and in Connecticut Mut. Life Ins. Co. v. Eaton (D. C. Conn.) 218 Fed. 206, both of which were affirmed by the Circuit Court of Appeals of the Second Circuit (223 Fed. 1022, 138 C. C. A. 663); and in the Northwestern Mut. Life Ins. Co. v. Fink (D. C. E. D. Wis.), 248 Fed. 568, decided in November, 1917. The Supreme Court of Pennsylvania also recently reached the same conclusion in construing a similar statute of that state, Commonwealth v. Penn. Mut. Life Ins. Co., 252 Pa. 512, 97 Atl. 677.

It remains therefore to consider only whether the distinctions before mentioned between the case at bar and the Mutual Benefit Case are of any materiality. It seems unnecessary to attempt to reiterate or enlarge upon the reasons on which the decisions in the latter case were based. They are quite as applicable to this case as to that. The so-called "dividends" awarded to holders of participating policies were no more earnings or profits—"dividends" as that term is ordinarily understood —of the plaintiff, they were no more dividends "paid," then were those in the Mutual Benefit Case. In this case the real earnings and profits were distributed among the stockholders. The "dividends" in question were mere excess premiums—overpayments which had been collected, and to which the participating policy holders were entitled as a matter of right, and the nonparticipating policy holders, both industrial and ordinary, as a matter of equity and fair dealing. Nor did they "arise from income received during any of the tax years, but from income received during previous years" (201 Fed. 918), as in the Mutual Benefit Case. If any part of them represented interest or income received during any of the tax years, it had already been taxed as such. For the purposes of this case, the only difference between the plaintiff and a mutual company is that the "cost" of insurance to the policy holders of the former, but not of the latter, includes dividends to the stockholders'; anything over and above that cost, in both kinds of companies, represents, not earnings, but excess premiums.

What conceivable difference can it make what kind of a company makes the distribution among its policy holders? It is the character of the funds distributed, not that of the company making the distribution, which is the decisive factor. In Connecticut Gen. Life Ins. Co. v. Eaton, supra, it was held that the decision in the Mutual Benefit Case was applicable to the "dividends" awarded to the holders of participating policies of a stock company. If all that has just been said to demonstrate that the case at bar, at least as respects the "dividends" awarded to participating policy holders, cannot be differentiated from the Mutual Benefit Case, does not apply with equal force to those "dividends" awarded by the plaintiff to its nonparticipating policy holders—those to whom it was under no legal obligation to make awards—as I think it does, surely the latter dividends did not "arise from income received during the tax years," at least such as had not

already been taxed, nor were they "received" by the plaintiff during those years. These facts were apparently considered by the Circuit Court of Appeals of this circuit, in the Mutual Benefit Case, sufficient to exempt so-called dividends awarded to policy holders from the provisions of the act of 1909. Whether or not the plaintiff was under a legal obligation to award the dividends is therefore of no materiality. Accordingly, the Mutual Benefit Case must govern the decision of this case on the point in question. Hence it follows that the plaintiff is entitled to recover the sum fixed in the stipulation as representing taxes assessed against and collected from it, for the years 1909, 1910, and 1911, on account of the so-called "dividends" allowed to policy holders in the ways before mentioned.

[3] 2. The plaintiff is required by the laws of the state of New Jersey (as it is also by the laws of the other states in which it does business) to file annual statements, showing its financial condition, in such form and containing such matters as the Commissioner of Banking and Insurance shall prescribe, who is, in turn, required to, annually, cause a valuation to be made of all outstanding policies of every life insurance company. 2 N. J. Comp. Stat. pp. 2859 and 2847, §§ 70, 24. In making the valuations, the Commissioner of New Jersey (and in this respect the practice prevailing in the different states varies) proceeds on the "all business written" basis, as distinguished from the "all paid for" basis; that is to say, he values, in addition to the policies on which the premiums have been fully paid at the time of the making of the valuation, policies upon which premiums are due and uncollected, and policies where a part of the annual premium—when it is payable in installments—has not at that time become due and payable. The latter are generally referred to as "deferred premiums." This results in the plaintiff being required by the Commissioner of New Jersey to maintain a "reserve" for those policies. The act of August 5, 1909, provides that the net income upon which the tax is to be assessed shall be ascertained by deducting from the gross income, among other items, "the net addition, if any, required by law to be made within the year to reserve funds." In reporting its net income for the years in question, the plaintiff properly deducted from its gross income the net additions made during the respective years to reserve funds. In ascertaining the latter, it included, in the "reserve" which it was required to maintain for those years respectively, the value of the policies upon which the premiums were due and uncollected, and deferred. The defendant contends that it was not justified in doing so.

The question to be decided, therefore, is whether the plaintiff, in figuring its net addition to the reserve funds which it was required by law to make, was justified in including the value of such policies. The argument upon which the defendant's contention in this respect is based seems to be that as part of the assets making up the plaintiff's "reserve" consisted of these uncollected and deferred premiums, and as they are not included in the plaintiff's gross income (as, clearly, they should not be so included, Mutual Benefit Life Ins. Co. v. Herold, supra; Conn. Gen. Life Ins. Co. v. Eaton, supra), that the value of such policies should not be included, for purposes of taxation, in its

net addition to reserve funds. But this argument, I think, begs the question, which is, as clearly defined by the Supreme Court in Mc-Coach v. Insurance Co. of North America, 244 U. S. 585, 37 Sup. Ct. 709, 61 L. Ed. 1333, what sum or sums in the aggregate did the state laws require the plaintiff to maintain as a "reserve fund," not the character of the assets making up the actual "reserve funds." No matter what their character, they were as effectively withdrawn from the plaintiff's use as if they had been expended. If therefore the law of New Jersey, or any other state in which it did business, made it obligatory on the part of the plaintiff to maintain a "reserve" on account of the policies of the character in question, it is of no materiality what the "reserve funds" actually consisted of, whether cash, securities, real estate, or due and uncollected premiums. The latter were perfectly good assets, because they could be realized on if there should be a loss on the policy. The law of New Jersey, to which the plaintiff is subject (N. J. Comp. Stat. 2854, § 56), provides that if the assets of any life insurance company, at any time, shall not equal the net value of all its outstanding policies, computed according to such "standards of valuation" as the Commissioner of Banking and Insurance may adopt, pursuant to the authority vested in him by law, and its other liabilities, that he may apply for an injunction restraining the company from doing any further business.

Since the Commissioner of Banking and Insurance of New Jersey has valued, among the plaintiff's outstanding policies, those upon which premiums were either due and uncollected or deferred, and both, and since the plaintiff was clearly required by the law of New Jersey to maintain a "reserve" at least equal to the net value of all its outstanding policies, as the commissioner might value them, it follows that, within the meaning of the act of 1909, the "reserve" which the company was required by the state law to maintain, from year to year, properly included a "reserve" for the policies of the character now in question. The term "reserve funds" clearly does not mean money, as defendant seems to contend, for the greater part of the "reserve" is, of course, invested in one way or another. I cannot see any force in the defendant's contention that this holding would permit the plaintiff to escape taxation, to the extent of such "reserve" maintained for such policies, because, if in any year the "reserve" has increased on account of the policies of the character in question, the result will be reflected in the next year's return, in that, if the premiums are subsequently collected, they will be included in the company's gross income for the year collected and hence be subject to a tax; and, if they are not collected, the policies will be canceled, and hence the net "reserve" in that year will be reduced to just that extent. If it may be said that this does not apply to the first year that the act of 1909 went into effect, it may be said with equal force that it would be necessary, in ascertaining the net additions to the "reserve" for that year, to include in the "reserve" of the previous year to be deducted, all "reserve funds" which the company had maintained on account of the policies of the character in question. The net result, except as it might be affected by the slight difference in the aggregate value of such policies from year to year,

would be the same. It follows therefore that the plaintiff was justified in making the deduction which it did in the respect just discussed.

3. As the plaintiff makes no claim in respect to the subject-matter of paragraph 4 of the stipulation before referred to—that is to say, that it is entitled to add to its "reserve funds" the value of the "supplementary contracts not involving life contingencies"—it is unnecessary to determine whether or not they could properly be included in ascertaining the item of "net additions to reserve fund." The same applies to three other items referred to in the first part of paragraph 4 of the stipulation, which aggregate, so far as the tax collected is concerned, $882.33. The result is that the plaintiff is entitled to a judgment of $48,231.85 with interest at the rate of 6 per cent. per annum from August 1, 1912.