NEW YORK LIFE INS. CO. v. ANDERSON, Internal Revenue Collector.

(Circuit Court of Appeals, Second Circuit. January 14, 1920.)

No. 50.

1. INTERNAL REVENUE ⬅9—DEDUCTION FOR DEPRECIATION OF PROPERTY UNDER CORPORATION TAX ACT.

Under Corporation Tax Act Aug. 5, 1909, § 38, providing that the net income of a corporation or insurance company shall be ascertained by deducting from its gross income received within the year "(2) all losses actually sustained within the year, * * * including a reasonable allowance for depreciation of property, if any," an insurance company, the greater portion of whose assets consists of stocks, bonds, and other securities, held entitled to a deduction of the amount of the market depreciation of such securities during the year.

2. INTERNAL REVENUE ⬅38—ISSUES IN ACTION TO RECOVER TAX PAID; BURDEN OF PROOF AND EVIDENCE.

In an action against a collector of internal revenue to recover a tax alleged to have been illegally exacted, plaintiff has the burden to prove that the tax collected, or some part of it, was not due, and defendant may give in evidence anything tending to show that no debt was due to plaintiff when the action began, whether such absence of indebtedness depends on the legality of the tax exacted, or the existence of another tax right against plaintiff, enforceable through defendant.

3. INTERNAL REVENUE ⬅9—EXCESS PREMIUMS OF MUTUAL INSURANCE COMPANY NOT "INCOME."

Excess premiums, collected by a mutual insurance company and returned to stockholders, or applied to their credit, do not constitute "income" of the company, within Corporation Excise Tax Act Aug. 5, 1909, § 38.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

4. INTERNAL REVENUE ⬅38—INTEREST ALLOWABLE ON RECOVERY IN ACTION AGAINST COLLECTOR.

Interest held properly allowed in an action against a collector of internal revenue on the amount of tax held to have been illegally exacted from plaintiff.

5. COURTS ⬅406(2)—CIRCUIT COURT OF APPEALS NOT AUTHORIZED TO ENTER FINAL JUDGMENT AT LAW.

Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), held not to authorize the Circuit Court of Appeals to enter final judgment on reversal of a judgment at law for error.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Southern District of New York.

Action by the New York Life Insurance Company against Charles W. Anderson, Collector of Internal Revenue. From the judgment, both parties bring error. Reversed.

For opinions below, see 257 Fed. 576; 262 Fed. 215. .

Plaintiff is a purely mutual life insurance company organized under the laws of the state of New York. As such it became liable to pay a tax to the United States for the year 1910, pursuant to section 38 of the Act of August 5, 1909 (36 Stat. 112). To ascertain the amount of said tax, plaintiff was called on to report, and did report, what it alleged to be its "entire net income."

By provisions of this section such net income "shall be ascertained by deducting from the gross amount of the income of such * * * insurance company, received within the year from all sources, * * * (2) all losses actually sustained within the year and not compensated by insurance or otherwise, including a reasonable allowance for depreciation of property, if any. * * *" The statutory requirements for annual return require statement of "the total amount of all losses actually sustained during the year and not compensated by insurance or otherwise, stating separately any amounts allowed for depreciation of property. * * *" The plaintiff, having made return as aforesaid to the defendant in his official capacity, paid the tax computed on the net income stated in said return.

At a later date the Commissioner of Internal Revenue disputed the correctness of the computation and (in effect) directed that the return be amended in such wise as to greatly increase the apparent net income of plaintiff, and to give rise to a tax over and above the amount already paid of $73,277.54. Thereupon the defendant demanded payment of this additional sum, and on February 3, 1912, plaintiff paid it under coercion and after due protest.

This action was brought to recover the amount so paid. The complaint sets forth the details of the reassessment at length, and shows just what items it conceives to have been illegally exacted. Plaintiff verified its complaint. The answer denies positively and on oath every allegation of the complaint, except plaintiff's incorporation, defendant's official character, and the jurisdiction of the court. By the agreed statement of facts submitted to the trial judge it admittedly appears that in the return as amended under official coercion there were certain clerical errors and some mistakes of law which entitled plaintiff to some recovery viz. at least $694.53.

It further appeared that plaintiff, having before this suit appealed to the Commissioner pursuant to R. S. § 3220 (Comp. St. § 5944), for the refund of said $73,277.54, such appeal was rejected, except as to said sum of $694.53. There is no evidence that plaintiff either sought to collect this small amount of money or that either collector or Commissioner tendered it. On all the facts stipulated the District Court substantially reassessed the tax to the satisfaction of neither party, and each took a writ of error.

Plaintiff complains: (1) That the court answered in the negative the following question: When such securities as stocks and bonds are the property of such a taxpayer as the plaintiff, much of whose business consists in dealing in and owning the same, is the amount of their market depreciation during the taxing year that "reasonable allowance for depreciation of property" which the statute authorizes as a deduction?

Plaintiff further assigns it as error: (2) That the court, under such pleadings as above outlined, increased plaintiff's apparent net income by taking away deductions allowed by defendant and the commissioner, and, having in this case computed an additional tax thereon, used the same as a set-off to diminish plaintiff's recovery.

Defendant complains: (1) That the court held dividends, or apportionment of surplus due to plaintiff's policy holders, and (by their directions) applied on account of renewal premiums, to be nontaxable. (2) Because interest was allowed upon the aforesaid sum of $694.53.

James H. McIntosh, of New York City, for plaintiff.

Francis G. Caffey, U. S. Atty. (Addison S. Pratt, Special Asst. U. S. Atty., of counsel), for defendant.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). We are reminded that the tax in question is not "in any proper sense an income tax," but is an excise on plaintiff's conduct of business in a corporate capacity. Anderson v. Forty-Two Broadway Co., 239 U. S. at page 72, 36 Sup. Ct. 17, 60 L. Ed. 152. This truth does not affect the present litigation, for we are concerned, in respect of the major proposition argued, not with what income is, but what shall be, deducted from an admitted gross income.

[1] The major issue here is the permissibility of deducting losses in value of the securities constituting the major portion of plaintiff's assets. That plaintiff is an insurance company is an accident, having no relation to the interpretation of the statute. It is but a happening that the business of such a corporation requires the maintenance of relatively enormous amounts of "securities" as the basis of its operation, and an asset sufficiently stable to answer the legal requirements of numerous states and countries, yet sufficiently liquid to respond to the needs of the holders of maturing policies.

It is here admitted that, judged by any standard familiar to business men, the securities of plaintiff were worth at the end of 1910 several million dollars less than they were at the beginning of that year. It is further admitted that, not only was it the business custom of plaintiff to revalue its securities in accordance with the market annually, but that such procedure was and is a reasonable business conservatism, and a frequent, though not universal, statutory requirement.

Under this taxing act the question is not strictly whether depreciation in market value is a loss, but whether, when Congress specifically includes within "losses actually sustained within the year, * * * a reasonable allowance for depreciation of property," depreciation does not become a loss, no matter what persons other than Congress may think on the subject.

We have no doubt that this loss in market value is depreciation. The word means, by derivation and common usage, a "fall in value; reduction of worth"; and it seems to us to require mention only to prove that the average citizen, for whom statutes are assumed to be made, would judge depreciation of his own bonds by the opinion of the public, however thoroughly convinced of the ultimate wisdom of holding onto what had depreciated.

This definition, as applied to securities, has been accepted in National Bank v. Baker, 27 Ill. App. at page 359, and the view of the scope of the word has been judicially indicated in Von Baumbach v. Sargent, etc., Co., 242 U. S. at page 524, 37 Sup. Ct. 201, 61 L. Ed. 460, where it is said that calling the taking of ore from a mine depreciation would be "a strained use of the term * * * as generally understood in business circles." The plain inference is that the phrase is used in the statute in a sense that would be generally understood in business

263 F.—34

circles, and we hold that the depreciation claimed by plaintiff in its return is used in that sense, and should have been allowed as a deduction.

[2] To decide whether the trial judge was right in method when he adjusted or reassessed this tax from all the facts before him requires consideration of (1) the inherent nature of an action such as this under federal rulings and (2) the effect of modern code practice thereon.

That a taxpayer's suit of this sort is essentially an action of assumpsit for money had and received has been too long settled to admit of doubt. Philadelphia v. The Collector, 5 Wall. 720, 18 L. Ed. 614; Cary v. Curtis, 3 How. 236, 11 L. Ed. 576; Bailey v. Railroad Co., 22 Wall. 604, 22 L. Ed. 840. Any assumpsit of this kind is of an equitable nature and of comparatively modern growth. Its history is classically set forth by Story, J., in Cary v. Curtis, supra, and by Selden, J., in McKyring v. Bull, 16 N. Y. 297, 69 Am. Dec. 696.

Ingrafting equitable principles on the common-law action has given rise to many anomalies, and just what defenses may be interposed under a general denial is a matter of great doubt. See an admirable summary in 5 Corp. Jur. p. 1405. In this case plaintiff urges that defendant has in effect been permitted under the general denial to use set-offs not pleaded, and indeed forced into the case by the trial court itself.

That an unpleaded set-off is not available under the general issue in assumpsit is certainly true. Cases cited above. It is equally true that, if we are to apply the New York Code of Civil Procedure even as laxly as is required by R. S. § 914 (Comp. St. § 1537), defendant has been given the benefit of issues not tendered by him.

But the section of the Revised Statutes only requires us to apply the Code "as near as may be," and we are of opinion that the decisions of the Supreme Court in tax cases like this have established the rule that the burden is on the plaintiff to show that the tax collected, or some part of it, was not due (Anderson v. Farmers', etc., Co., 241 Fed. 329, 154 C. C. A. 202), and that this must be done in a suit where the defendant may give in evidence anything showing or tending to show that no debt was due to the plaintiff when the action began, no matter whether such absence of indebtedness depends on the legality of the tax exacted or the existence of another tax right against the plaintiff enforceable through the party defendant.

It may be admitted that this is illogical and is based merely on a spirit of convenience. The same course was pursued in Crocker v. Malley, 249 U. S. 223, 39 Sup. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601 (March 17, 1919), and the only comment upon it by Holmes, J., is that—

"If the United States retains from the amount received by it the amount that it should have received, it cannot recover that sum in a subsequent suit."

We therefore think that the anomalous practice pursued below is required by federal authority. The only limitation upon it is not suggested by anything in this record. In assumpsit for money received, the plaintiff has long been able under the common counts to introduce

any evidence tending to show that defendant has money which in equity and conscience he ought to pay over; yet plaintiff cannot be permitted to turn the generality of his pleading into a surprise, and resort for recovery to a ground of which the defendant could not be apprised by the declaration. Of this McClung v. Foshour, 47 Hun, 421, affirmed 113 N. Y. 640, 21 N. E. 414, is a good local example. But the rule works both ways, and the defendant cannot introduce evidence or advance defenses which embarrass the plaintiff by way of surprise or other inequity. The action itself is equitable, and so equity prescribes its limits. In this instance, nothing was availed of, except matters appearing in the stipulation of facts signed by both parties. For these reasons we cannot sustain plaintiff's assignments of error in this regard.

[3] The defendant's first contention is confessedly apparently opposed to our decision in Eaton v. Connecticut, etc., Co., 223 Fed. 1022, 138 C. C. A. 663, affirming (D. C.) 218 Fed. 206, and also to Herold v. Mutual Benefit, etc., Co., 201 Fed. 918, 120 C. C. A. 256, affirming (D. C.) 198 Fed. 199; Penn., etc., Co. v. Lederer (D. C.) 247 Fed. 559; Prudential, etc., Co. v. Herold (D. C.) 247 Fed. 681; Northwestern, etc., Co. v. Fink (D. C.) 248 Fed. 568.

The point now suggested as novel is that in all these decisions the dividends allowed by the insurers to their policy holders were voluntarily credited or paid to them, as elected; whereas, by virtue of the present statutes of New York, such allotment, dividend, or apportionment is imposed on companies such as is this plaintiff.

We fail to see that the distinction entails a difference, for purposes of taxation, at all events. It may be assumed that such obligatory apportionment or allotment gives to the policy holder proprietary rights in the company's surplus. Equitable, etc., Society v. Brown, 213 U. S. 25, 29 Sup. Ct. 404, 53 L. Ed. 682. But the sole question here is, not what the policy holder owns, but what the insurance company gets, and it gets no more or less when it acts fairly of its own motion and when such fairness becomes a statutory virtue. We adhere to our former ruling on this subject.

[4] The defendant's contention that interest was not allowable we cannot uphold. We have very lately been told that—

"No one could contend that technically a judgment of a District Court in a suit against the collector was a judgment against or in favor of the United States." Sage v. United States, 250 U. S. 33, 39 Sup. Ct. 415, 63 L. Ed. 828 (May 19, 1919).

Consequently no question of allowance of interest or costs as against the sovereign arises and the suit is to be regarded (except as affected by certificate of probable cause under R. S. § 989 [Comp. St. § 1635]) as against a private person. We are not advised by this record as to whether any certificate has been issued, and our decisions in Treat v. Farmers', etc., Co., 185 Fed. 760, 108 C. C. A. 98, and New York Mail, etc., Co. v. Anderson, 234 Fed. 590, 148 C. C. A. 356, are applicable.

It is also urged that interest should not have been allowed as complained of, because the Commissioner signified his willingness to re-

turn that amount to plaintiff. Whether plaintiff would have prejudiced this suit by taking what it could get and suing for the rest is a matter not before us. It is enough to repeat that in this action the defendant, even though he has the United States behind him, is to be treated as a private person. There was no tender at common law, and no offer of judgment under the Code of New York. Consequently this defendant is not in a position to make the argument advanced.

[5] It thus appearing that the lower court's action in construing the word "depreciation" imposes on us the duty of reversal, plaintiff asserts that under Judicial Code, § 269, as amended by Act Feb. 26, 1919, 40 Stat. 1181 (Comp. St. Ann. Supp. 1919, § 1246), we are authorized to give or direct such final judgment for the plaintiff as may appear justified by the stipulation of facts aforesaid. The amendment relied on declares that:

"On the hearing of any * * * writ of error * * * the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

We do not think that these words give, or were intended to give, the power suggested; but, if the statute does mean what plaintiff asserts, it is to that extent unconstitutional under Slocum v. New York, etc., Co., 228 U. S. 364, 33 Sup. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029.

Judgment reversed, with costs, and new trial ordered.